# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

No. 24-1707

———————————

T.M; J.M.; A.M,

*Appellants,*

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION; BALTIMORE WASHINGTON MEIDCAL CENTER, INC.; KATHLEEN MCCOLLUM; THOMAS J. CUMMINGS, JR. AND BE-LIVE-IT THERAPY, LLC

*Appellees.*

———————————

On Appeal from the United States District Court for the District of Maryland Case No. 1:23-CV-01684-SAG

———————————

## APPELLANTS' OPENING BRIEF

———————————

Ray M. Shepard, Esquire
THE SHEPARD LAW FIRM, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Telephone: (410) 255-0700
Facsimile: (443) 773-1922
Ray@Shepard.Law
*Counsel for Appellant*

Page

JURISDICTIONAL STATEMENT…………………………………………..1

ISSUES PRESENTED FOR REVIEW…………………………………….1

STATEMENT OF THE CASE……………………………………………..1

ARGUMENT SUMMARY……………………………………………...9

ARGUMENT…………………………………………………………...13

I.      Standard of Review……………………………………….13

II.     The District Court improperly applied the *Rooker-Feldman*
        doctrine to dismiss the action for lack of subject matter
        jurisdiction……………………………………………………..16

        A.      The *Rooker-Feldman* doctrine does not apply
                to state administrative decisions, even those that
                are subject to review by state courts…………………...18

        B.      The *Rooker-Feldman* doctrine does not apply because
                Plaintiffs are not complaining of an injury caused by a
                state-court judgment itself…………………………….20

        C.      Under the plain language of 28 U.S.C. § 1257(a), the
                *Rooker-Feldman* doctrine applies only to appellate
                jurisdiction over a final judgment from the highest
                court of a State in which the decision could be had……………26

        D.      The *Rooker-Feldman* doctrine applies only to cases
                brought by "state court losers."………………………….33

III.    The Complaint contains sufficient factual allegations
regarding J.M. and A.M.'s claims to avoid dismissal under
Rule 12(b)(6)…………………………………………………...36

CONCLUSION…………………………………………………………...44

CERTIFICATE OF COMPLIANCE…………………………………………...46

# Table of Authorities

Cases

*A Soc'y Without a Name v. Virginia,*
    655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied,*
    566 U.S. 937 (2012)…………………………………………………..15

*Accohannock Indian Tribe v. Tyler,*
    2021 U.S. Dist. LEXIS 238683,
    2021 WL 5909102 (D. Md. Dec. 14, 2021)…………………………27, 29

*Ashcroft v. Iqbal,*
    556 U. S. 662 (2009)……………………………………………….36

*Bell v. Maryland,*
    378 U.S. 226 (1964)………………………………………………39

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)…………………………………………14, 36

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 U. S. 520 (1993)……………………………………………….42

*Colonial Penn Ins. Co. v. Coil,*
    887 F.2d 1236 (4th Cir. 1989)………………………………………...34

*Cruzan v. Director, Mo. Dept. of Health,*
    497 U. S. 261 (1990)……………………………………………….24

*Davani v. Dept. of Transp.,*
    434 F.3d 712 (4th Cir. 2006)……………………………………………….20

*Deakins v. Monaghan,*
    484 U.S. 193 (1988)………………………………………………...32

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
    637 F.3d 435 (4th Cir. 2011)……………………………………………….14

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir. 1999)……………………………………………………13

*Efreom v. McKee,*
46 F.4th 9 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023)………..25, 26

*England v. La. State Bd. of Med. Exam'rs,*
375 U.S. 411 (1964)……………………………………………………………..33

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005)…………………..9, 16, 17, 18, 27, 31, 32, 33, 35, 43

*Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.,*
410 F.3d 17 (1st Cir. 2005)………………………………………….............31

*Goines v. Valley Cmty. Servs. Bd.,*
822 F.3d 159 (4th Cir. 2016)……………………………………………………15

*Goldfarb v. Mayor & City Council of Balt.,*
791 F.3d 500 (4th Cir. 2015)………………………………………....15, 34

*Government of Virgin Islands v. Neadle,*
861 F. Supp. 1054 (MD Fla. 1994)……………………………………...31

*Hammons v. Univ. of Md. Med. Sys. Corp.,*
551 F. Supp. 3d 567 (D. Md. 2021)……………………………………..37

*Hammons v. Univ. of Md. Med. Sys. Corp.,*
No. DKC 20- 2088, 2023 WL 121741 (D. Md. Jan. 6, 2023)……………...38

*Hoblock v. Albany County Bd. of Elections,*
422 F.3d 77 (2d Cir. 2005)………………………………………9, 10, 20, 21

*Hulsey v. Cisa,*
947 F.3d 246 (4th Cir. 2020)………………………...9, 10, 20, 21, 22, 27, 35

*Idlewild Bon Voyage Liquor Corp. v. Epstein,*
370 U.S. 713 (1962)…………………………………………………..30

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018)……………………………………………………………..39

*Johnson v. City of Shelby,*
    574 U.S. 10 (2014)…………………………………………………12, 14, 36, 39, 44

*Johnson v. Orr*,
    551 F.3d 564 (7th Cir. 2008)…………………………………………………….25

*Jonathan v. Justice,*
    41 F.4th 316 (4th Cir. 2022)………………………………………..10, 16, 17

*Jordahl v. Democratic Party of Va.,*
    122 F.3d 192 (4th Cir. 1997)…………………………………………………….24

*Karcher v. May*,
    484 U.S. 72 (1987)………………………………………………………………33

*King v. Rubenstein,*
    825 F.3d 206 (4th Cir. 2016)………………………………………………….13

*Koontz v. St. Johns River Water Mgmt. Dist*.,
    570 U.S. 595 (2013)……………………………………………………….12, 23

*Lance v. Dennis,*
    546 U.S. 459 (2006)………………………………………..9, 11, 16, 18, 33, 35

*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995)…………………………………………………………..37

*Local No. 93, Int. Asso. of Firefighters, et al. v. Cleavland,*
    478 U.S. 501 (1986)……………………………………………12, 22, 23, 40

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)…………………………………………………………..42

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*.,
    460 U.S. 1 (1983)………………………………………………………30, 32

*Napata v. Univ. of Md. Med. Sys. Corp.*,
    417 Md. 724, 12 A.3d 144 (2011)……………………………………………37

*Overbey v. Mayor of Baltimore*,
    930 F.3d 215 (4th Cir. 2019)……………………………………41, 42, 43

*Paradise Wire & Cable Defined Ben. Pension Plan v. Weil*,
    918 F.3d 312 (4th Cir. 2019)……………………………………………15

*Payne v. Ford Motor Credit Co., LLC*,
    2020 U.S. Dist LEXIS 160755,
    2020 WL 5250287 (D. Md. Sept. 3, 2020)………………………...11, 27, 29

*Phair v. Zambrana*,
    2016 U.S. Dist. LEXIS 63830,
    2016 WL 258634 (D. Md. Jan. 19, 2016)…………………………………39

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)……………………………………………………32, 33

*Ray v. Roane*,
    948 F.3d 222 (4th Cir 2020)…………………………………………..13

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992)…………………………………………13

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)………………………………………………..*passim*

*Shelley v. Kraemer*,
    334 U.S. 1 (1948)……………………………………………………..39

*Simmons v. United Mortg. & Loan Inv., LLC*,
    634 F.3d 754 (4th Cir. 2011)…………………………………………13

*Sonda v. W.Va. Oil & Gas Conservation Comm'n*,
    92 F.4th 213(4th Cir. 2024)……………………………………29, 30

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)…………………………………………………..42

*T.M. v. Univ. of Md. Med. Sys. Corp.,*
2024 U.S. Dist. LEXIS 130360,
2024 WL 3555124 (D. Md. July 23, 2024)…………………………………4

*Thana v. Bd. of License Comm'rs for Charles County, Maryland,*
827 F.3d 314 (4th Cir. 2016)……………………10, 11, 16-19, 22, 27-29, 32

*United States v. Watson,*
793 F.3d 416 (4th Cir. 2015)………………………………………………19

*United States ex rel. Maharaj v. Estate of Maharaj,*
*427* F.Supp.3d 625 (D. Md. 2019)…………………………………………13

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,*
535 U.S. 635 (2002)……………………………………………………..9, 18

*Virginia v. Rives,*
100 U.S. 313 (1880)……………………………………………………..39

*Vitek v. Jones,*
445 U.S. 480 (1980)……………………………………………………..24

*Wash. Post v. McManus,*
944 F.3d 506 (4th Cir. 2019)………………………………………………39

*Washington v. Harper,*
494 U.S. 210 (1990)…………………………………………….19, 20, 24

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*
780 F.3d 597 (4th Cir. 2015)………………………………………………15

Statutes, Rules & Regulations

28 U.S.C. § 1257(a)………………………………1, 11, 16, 17, 26-29, 31

28 U.S.C. § 1291………………………………………………...1, 29, 30

28 U.S.C. § 1331………………………………………………………...1

28 U.S.C. § 1343(a)(3)…………………………………………………...1

42 U.S.C. § 1983…………………………………………………………….37

Md. Health Gen. Code § 10-708…………………………………………………3

Maryland. Md. Code Ann. Educ. § 13-302(7)………………………………….37

Fed. R. Civ. P. 8(a)(2)…………………………………………………...13, 14

Fed. R. Civ. P. 12(b)(6)…………………………………………………...14

Fed. R. Civ. Proc. 15(a)(2)……………………………………………..39

Federal Rule of Evidence 201……………………………………………...15, 16

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The District Court, however, dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine which is derived from 28 U.S.C. § 1257(a). The United States Court of Appeals for the Fourth Circuit has federal appellate jurisdiction over the final decision of the District Court pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.      Whether the District Court properly relied upon the *Rooker-Feldman* doctrine to dismiss Plaintiffs' federal lawsuit challenging a Consent Order entered by the Circuit Court for Anne Arundel County considering a petition for habeas corpus relief from an administrative agency's determination certifying T.M.'s involuntary commitment to a psychiatric hospital?

II.     Whether the District Court properly dismissed J.M. and A.M.'s claims for equitable relief where all parties agree that the Circuit Court for Anne Arundel County was without power to enter a consent decree that imposed obligations on non-parties to the case without their consent.

## STATEMENT OF THE CASE

Plaintiff T.M., a college graduate, together with her parents, J.M. and A.M., (collectively, "Plaintiffs") commenced this action against the University of Maryland Medical System Corporation ("UMMSC"), the Baltimore Washington

1

Medical Center ("BWMC"), and two individuals (collectively, "Defendants"), by filing a Complaint for Declaratory and Injunctive Relief in the District Court on June 22, 2023. JA 0011-49. T.M. has been diagnosed with Hashimoto's Thyroiditis and Non-Celiac Gluten Sensitivity, which causes changes in T.M.'s mental status upon ingesting gluten. JA 0019-20 ¶ 28. On March 23, 2023, T.M. accidentally ingested gluten and experienced a psychotic episode that resulted in a police escort to the emergency department at BWMC. JA 0021 ¶¶ 41-42. Prior to these events, T.M. designated her father, J.M., as her healthcare agent in her Advance Directive to allow her father to make healthcare decisions for her when she is unable to do so, including "the power and authority to approve [T.M.'s] admission to or release from a psychiatric hospital or unit." JA 0020-21 ¶¶ 33-38. Despite requests from T.M. and her father for voluntary admission, T.M. was involuntarily admitted to BWMC after an administrative hearing on April 11, 2023. JA 0023-24 ¶¶ 57–58, 61, 63.

After receiving the certification for involuntary commitment, a BWMC psychiatrist, Dr. Cummings, immediately scheduled a clinic review panel and obtained an order authorizing him to inject T.M. with antipsychotic medications against the advice of her long-time treating psychiatrist, against her will, and against the will of her father. JA 0019 ¶ 27, JA 0026-72 ¶ 78-80. T.M. immediately appealed the panel order and another administrative hearing was scheduled for April 25, 2023. JA 0027 ¶ 81. On April 20, 2023, J.M. sued the BWMC and UMMSC, to require

them to recognize T.M.'s Advance Medical Directive and J.M.'s appointment as T.M.'s lawfully designated healthcare agent in *J.M. v. Baltimore Washington Med. Ctr., et al.,* Case No. C-02-CV-23-000764 (Cir. Ct. A.A. County 2023). JA 0015-16 ¶ 8. On April 21, 2023, Defendants voluntarily withdrew their request for forcible injections (thereby canceling the April 25th hearing) because "since the initial [clinical review panel], the patient has been taking medications." JA 0027 ¶ 84. Nevertheless, Dr. Cummings attempted on three consecutive days to inject T.M. with antipsychotic drugs on April 24, 25, and 26, 2023 and each time T.M. refused the injections. JA 27-28 ¶¶ 86-88.

Frustrated, Dr. Cummings re-scheduled a clinical review panel to convene on April 27, 2023. JA 0028 ¶¶ 89-90. The panel affirmed Dr. Cummings's renewed request for forcible injection, which T.M. immediately appealed, triggering her right to another ALJ hearing. JA 0031-32 ¶¶ 104, 111. Following a hearing, the ALJ found that BWMC had complied with the statutory requirements to forcefully inject T.M. against her will. JA 0034 ¶ 128. To halt the injections, on May 3, 2023, T.M. filed a petition for judicial review of the ALJ's decision authorizing BWMC to involuntarily inject T.M. with psychiatric medications pursuant to Md. Health Gen. Code § 10-708, *In re T.M.*, Case No. C-02-CV-23-000902 (Cir. Ct. A.A. County 2023). JA 0016 ¶ 9. Two days later, on May 5, 2023, T.M. filed a petition for a writ of habeas corpus to remedy her unlawful detention in *T.M. v. Baltimore Washington*

*Med. Ctr., et al.,* Case No. C-02-CV-23 000910 (Cir. Ct. A.A. County 2023). JA 0016 ¶ 10.

On June 9, 2023, T.M. brought an action in the United States District Court for the District of Maryland under 42 U.S.C. § 1983 seeking damages for violations of her constitutional rights guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article 24 of the Maryland Declaration of Rights in *T.M. v. University of Maryland Med. Sys. Corp., et. al.*, 1:23 cv-10572 (D. Md. 2023). JA 0016 ¶ 12. This lawsuit alleged, *inter alia,* that Defendants were unlawfully detaining T.M. against her will, and T.M. sought an emergency motion to secure her release, which the Court scheduled for June 13, 2023. JA 0100.[1]

On the same day as the scheduled federal hearing, Tuesday, June 13, 2023, two separate matters were also scheduled to be heard in the Circuit Court for Anne Arundel County at 9:00 A.M.: one regarding judicial review of an administrative order authorizing the Facility to inject T.M. with antipsychotic drugs against her will (Case No. C-02-CV-23-000902) and another regarding T.M.'s pending request for habeas corpus relief to secure her release from unlawful detention (Case No. C-02-CV-23-000910). ECF #17 at 2. T.M. thus faced the possibility of being injected with antipsychotic drugs against her will before the federal emergency TRO hearing could

---

[1] Reported at *T.M. v. Univ. of Md. Med. Sys. Corp.,* 2024 U.S. Dist. LEXIS 130360, 2024 WL 3555124 (D. Md. July 23, 2024).

be heard later that day. *Id.* To avoid this possibility and to secure her release, T.M.'s attorneys agreed to the terms of the Consent Order that is the subject of this separate action. JA 0123-125 at Ex. 3.

The conditions to which T.M. was forced to agree to obtain her freedom in the "Consent Order" entered by the Circuit Court for Anne Arundel County in the habeas case, Case No. C-02-CV-23-000910, are patently unconstitutional. Under the 'consent order," T.M. must: (1) replace her long-term treating psychiatrist, Dr. Heffner, with another psychiatrist; (2) "continue to take the Invega (paliperidone) 6 mg in pill form daily that was prescribed while in the hospital," (3) use the services of Family Intervention Partners ("FIP") at least once every three months; (4) allow FIP and its providers to act as one of her mental health providers; (5) "instruct her [new] treating psychiatrist to consult with FIP regarding her treatment regime, including . . . prescribed medication;" (6) "follow all recommendations of her [new] treating psychiatrist regarding her treatment and medications/prescriptions;" (7) "accept referral to" and "follow" all "recommendations" made by "the Anne Arundel County Crisis Intervention Team;" (8) "take all prescribed medications that concern her psychiatric health;" and (9) "dismiss, with prejudice, all pending actions against [the Defendants]." JA 0045-46 ¶ 187. The "Consent Order" contains no time limitations and purports to control T.M.'s healthcare decisions, including the drugs she must take and the providers she must use, in perpetuity. JA 0046 ¶ 188. The

"Consent Order" also purports to bind T.M.'s parents, who were not parties to the habeas case in which the order was entered. Under the "consent order," T.M.'s parents—J.M. and A.M.—must: (1) "remind, encourage, and monitor" T.M.'s "ingestion of her prescribed medications" and (2) "immediately notify FIP and the Anne Arundel Crisis Team if [T.M.] becomes non-compliant with her medication." JA 0046 ¶ 189.

On January 3, 2024, Judge Pamela Albin of the Circuit Court for Anne Arundel County ruled "that the ALJ's legal conclusions as to the validity and operability of [T.M.'s] Advanced Mental Health Directive [were] legally erroneous" because the "evidence before the ALJ did not support this conclusion" and therefore "the ALJ should have abided by Petitioner's Directive and allowed Petitioner's Healthcare Agent, [J.M.], to make decisions regarding Petitioner's BWMC admission." *In re: T.M.,* Case No.: C-02-CV-23-000842 (Cir. Ct. A.A. County 2023).[2] Thus, T.M. received no consideration from the Consent Order, she already had the right to be free from custody at BWMC when she was forced to give up her fundamental rights to secure her release and avoid unwanted injections.

Upon initiating the instant action challenging the Consent Order on June 22, 2023, the Plaintiffs filed a motion for a temporary restraining order ("TRO") on June

---

[2] BWMC's appeal from this decision is currently pending in the Appellate Court of Maryland, Appeal No.: ACM-REG-2330-2023.

22, 2023. ECF #6. On June 26, 2023, the District Court directed Plaintiffs to provide to the court briefing regarding "why th[e] case is properly in federal court." JA 0078-79. On July 3, 2023, the Plaintiffs filed a response to the District Court's order and informed the Court that an appeal in the underlying state habeas case had been filed on June 28, 2023. ECF #17 at 8 n.5. The Court Ordered Defendants to respond, and on July 12, 2023 the Defendants filed their response. ECF #20. On July 13, 2023, the District Court ordered the Plaintiffs to file the Notice of Appeal, and any other documents filed in the underlying state habeas case appeal. JA 0081. Plaintiffs timely complied on July 17, 2023. JA 0169-181.

On July 18, 2023, the District Court ordered additional briefing from the parties relating to issues of abstention. JA 0082. The parties each filed supplemental briefs. ECF Docs. #25, #26. Agreeing with Plaintiffs that abstention was improper, the Court scheduled a hearing on Plaintiff's TRO. ECF #27. The motion for a TRO was denied on September 5, 2023. ECF #34. Defendants filed a motion to dismiss on October 23, 2024. ECF #40. Plaintiffs opposed the motion to dismiss on December 6, 2023. ECF #47. Defendants filed a reply in support of their motion to dismiss on January 22, 2024. ECF #65. With permission from the District Court, Plaintiffs filed a sur-reply in opposition to the motion to dismiss on February 6, 2024. ECF #72.

After more than five (5) months, the District Court still had not ruled on the motion to dismiss, and on July 18, 2024 the Court directed Plaintiffs to provide a "status update on the pending state court appeal. . . ." JA 0083. Plaintiffs responded that same day, informing the District Court that the state court appeal "remains stayed by the Appellate Court of Maryland pending resolution of this matter."[3] JA 0084-86. On July 19, 2024, the District Court directed the Plaintiffs to provide to the Court "all briefing filed in the state court appeal related to the stay order. . . ." JA 0087. Plaintiffs timely responded, filing the requested documents in the District Court on July 22, 2024. JA 0088-97. The following day, July 23, 2024, the District Court filed a 14-page Memorandum Opinion and Order dismissing the action under the *Rooker-Feldman* Doctrine. JA 0098-111 and JA 0112. A timely notice of appeal was filed on July 24, 2024. JA 0113.

---

[3] The Stay Orders entered by the Appellate Court of Maryland are *temporary.* Each Order provides "that the counsel for the appellant shall update this Court as to the status of this appeal and how the parties propose to proceed within 15 days of the United States District Court for the District of Maryland's resolution of *TM, et al. v. University of Maryland Medical System Corporation, et al.,* Case No. 1:23-CV-01684-SAG, or within 120 days of the date of this Order, whichever comes sooner." *See* Add. 0011-13. Pursuant to the temporary nature of the stay, T.M.'s counsel filed multiple status reports, one every 120 days, updating the Appellate Court as to the status of the proceedings in the District Court. *See* JA 0094-97 Exs. 2-3.

## ARGUMENT SUMMARY

For several independent reasons, the *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction in this case. First, T.M.'s involuntary confinement at BWMC resulted when she lost an administrative agency hearing in which the ALJ erroneously concluded that T.M.'s involuntary commitment was lawful under Maryland law. JA 0016 ¶ 10, JA 0023-24 ¶¶ 58-61, JA 0026-27 ¶ 78. Because T.M. filed the underlying state habeas lawsuit seeking an order requiring BWMC to release her, the state lawsuit sought relief from the erroneous administrative finding. The Supreme Court has made clear that the *Rooker-Feldman* doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005). Accordingly, the *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction in this case.

Second, Plaintiffs are not complaining of an injury caused by a state-court judgment itself. *Hulsey v. Cisa,* 947 F.3d 246, 250 (4th Cir. 2020)(citing *Exxon*, 544 U.S. at 284). As the Second Circuit explained in *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005), "A plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state court

decision without being 'produced by' the state court judgment." To illustrate injury produced by a state court judgment itself, the *Hoblock* Court hypothesized that a federal lawsuit complaining that state agents took children from a parent pursuant to a state court order authorizing the agents to do so could not avoid *Rooker-Feldman* by alleging injury from the agents' actions because their actions were authorized or "produced by" the state court order itself. Unlike *Hoblock*'s example of state agents taking custody of a child pursuant to a state-court judgment, BWMC's actions, *i.e.,* their unlawful confinement of T.M. against her will was not authorized by or done pursuant to the Consent Order. Plaintiffs do not challenge any action taken pursuant to the Consent Order; rather the state court simply "ratified" or "acquiesced in" the agreement of the parties without addressing the unconstitutional nature of the agreement. For this independent reason, the *Rooker-Feldman* doctrine does not apply to this action. *See Hulsey*, 947 F.3d at 250; *accord Thana v. Bd. of License Comm'rs for Charles County, Maryland*, 827 F.3d 314, 321 (4th Cir. 2016).

Third, the *Rooker-Feldman* doctrine does not require abdication of federal jurisdiction simply because a state appellate court has issued a temporary stay that does not end the state-court proceedings. "The *Rooker-Feldman* doctrine applies [only to final] state court decisions, not ongoing state court proceedings." *Jonathan v. Justice*, 41 F.4th 316, 341 (4th Cir. 2022). This Court in *Thana* indicated that after *Exxon's* instruction to confine the *Rooker-Feldman* doctrine to "cases of the kind

from which the doctrine acquired its name," the *Rooker-Feldman* doctrine would not be implicated unless a federal court has been called upon to "exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which the decision could be had,' 28 U.S.C. § 1257(a), . . . as was the case in both *Rooker* and *Feldman*." *Thana,* 827 F.3d at 321 (citing *Exxon*, 544 U.S. at 284, 291); *accord Payne v. Ford Motor Credit Co., LLC*, 2020 U.S. Dist. LEXIS 160755, at *9, 2020 WL 5250287 (D. Md. Sept. 3, 2020)("the Fourth Circuit recently restricted application of the *Rooker-Feldman* doctrine to situations in which a district court is 'called upon to exercise appellate jurisdiction' over a final judgment from 'the highest court of a State in which a decision could be had.'")(quoting *Thana*, 827 F.3d at 321). For this additional reason, the *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction in this case.

Finally, the *Rooker-Feldman* doctrine applies only to "state court losers." *Lance*, 546 U.S. at 463. While T.M. lost at the administrative agency level resulting in certification of her involuntary commitment to BWMC's psychiatric department, she won in the Circuit Court regarding the lawfulness of her involuntary commitment to BWMC. *See In re: T.M.,* Case No.: C-02-CV-23-000842 (Cir. Ct. A.A. County 2023)(*See* Add. 0001-10). The action in this case does not challenge that decision because T.M. was the winner. Instead, invoking the unconstitutional conditions doctrine, this independent parallel action challenges the coercive way in

which the Consent Order was obtained in the related state habeas action seeking T.M.'s release from BWMC's custody. The "unconstitutional conditions doctrine" reflects "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Since T.M. cannot be accurately characterized as a "state court loser," this is yet another reason why the *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction in this parallel case.

In *Johnson v. City of Shelby*, 574 U.S. 10 (2014), the Supreme Court "summarily reversed" a grant of summary judgment for the plaintiff's failure to identify a legal theory in support of his or her claim for relief. *Johnson*, 574 U.S. at 11. The instant Complaint contains sufficient factual allegations to demonstrate that the challenged Consent Order purports to impose obligations on J.M. and T.M., which also happen to violate their First Amendment rights. "Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. . . . And, of course, *a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree*." *Local No. 93, Int. Asso. of Firefighters, et al. v. Cleavland,* 478 U.S. 501, 529 (1986)(emphasis added). The Complaint, which attached the Consent Order as an

exhibit, sufficiently alleges that T.M. and J.M. were not parties to the case and that the Consent Order nevertheless imposes obligations upon them to which they did not agree. Dismissal of T.M. and J.M.'s claims was therefore improper.

## ARGUMENT

### I. Standard of Review

The Fourth Circuit reviews a district court's grant of a motion to dismiss *de novo. Ray v. Roane,* 948 F.3d 222, 226 (4th Cir 2020); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Such a motion "constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *United States ex rel. Maharaj v. Estate of Maharaj, 427* F.Supp.3d 625, 638 (D. Md. 2019).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *Id.* That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with

"fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Detailed factual allegations are not required to satisfy this standard. *Twombly,* 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10, (2014). Rule 12(b)(6) does require more than "bald accusations or mere speculation." *Twombly,* 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the

plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 606 (4th Cir. 2015); However, a court may consider documents incorporated into the complaint by reference. *Paradise Wire & Cable Defined Ben. Pension Plan v. Weil,* 918 F.3d 312 (4th Cir. 2019)(citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)). When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, the court may credit the document over conflicting allegations in the complaint. *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 167 (4th Cir. 2016). Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition to the above documents, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.,* 791 F.3d 500, 508 (4th Cir. 2015). Under Federal Rule of Evidence 201,

"[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

## II. The District Court improperly applied the *Rooker-Feldman* doctrine to dismiss the action for lack of subject matter jurisdiction.

The *Rooker-Feldman* doctrine is derived from Congress' assignment of exclusive *appellate* jurisdiction over final state court judgments to the Supreme Court in 28 U.S.C. § 1257(a). *Thana v. Bd. of License Comm'rs for Charles County, Maryland*, 827 F.3d 314, 318-19 (4th Cir. 2016). The only decisions reviewable under § 1257(a); however, are final decisions "by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). "The [*Rooker-Feldman*] doctrine thus holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Thana*, 827 F.3d at 319 (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). The Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) "significantly altered [the Fourth Circuit's] interpretation of the *Rooker Feldman* doctrine," *Jonathan v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022)(quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006)), and confined the doctrine to cases whose procedural postures mirror those in the *Rooker* and *Feldman* cases themselves.

*Thana,* 827 F.3d at 319-320 (quoting *Exxon*, 544 U.S. at 291); *Justice,* 41 F.4th at 340)("*Exxon* goes even further, 'restrict[ing] the doctrine to cases whose procedural postures mirrored those in the *Rooker* and *Feldman* cases themselves,' where 'the losing party in state court filed suit in federal court after the state proceedings ended, [complaining of an injury caused by the state court judgment and] seeking review and rejection of that judgment.'"); *Exxon*, 544 U.S. at 291.

"In *Rooker*, a party that lost before the Indiana Supreme Court and that failed to obtain review by the U.S. Supreme Court filed an action in federal district court, challenging the constitutionality of the state court judgment and seeking to have it declared 'null and void.'" *Thana,* 827 F.3d at 319 (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414-15 (1923)). The Supreme Court in *Rooker* affirmed the district court's dismissal for lack of jurisdiction because Congress vested exclusive appellate jurisdiction in the Supreme Court in 28 U.S.C. § 1257(a). *Id.*

In *Feldman,* the plaintiffs sued the District of Columbia's Court of Appeals[4] in federal district court after that court denied their requests for a waiver of a bar membership rule. *Thana,* 827 F.3d at 319 (citing *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 468 (1983)). "Again, the Supreme Court affirmed dismissal of the case, holding that while the plaintiffs could challenge the constitutionality of the bar admission rule itself in a federal district court, they could not challenge the District

---

[4] The Cout of Appeals is the highest appellate court in the District of Columbia.

of Columbia court's judgment denying their waiver petitions in a federal district court." *Id.*

"To emphasize the narrow role that the *Rooker-Feldman* doctrine is to play, the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman,* it has never applied the doctrine to deprive a district court of subject matter jurisdiction." *Thana,* 827 F.3d at 320 (citations omitted). Likewise, the Fourth Circuit has observed that it has not issued a single published decision since *Exxon* holding that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine*. Id.*; *Justice,* 41 F.4th at 340 (this "observation remains true today."). This case does not fall within the *Rooker-Feldman* doctrine's narrow scope for multiple independent reasons.

      A. **The *Rooker-Feldman* doctrine does not apply to state administrative decisions, even those that are subject to review by state courts.**

First and foremost, the *Rooker-Feldman* doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); *see also Lance,* 546 U.S. at 464; *Exxon,* 544 U.S. at 287. The Complaint in this case makes clear that T.M. brought the state habeas case to seek relief from a state administrative agency's determination that she could be lawfully committed involuntarily to BWMC under Maryland law. JA 0016 ¶ 10, JA 0023-24

¶¶ 58-61, JA 0026-27 ¶ 78. This case therefore cannot reasonably be distinguished from *Thana,* where this Court found that the plaintiff in that case had "commenced an independent concurrent action challenging actions by a state administrative agency." *Thana,* 827 F.3d at 316. This Court reasoned, "State administrative decisions, *even those that are subject to judicial review by state courts*, are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress." *Thana,* 827 F.3d at 321 (emphasis added).

According to the District Court, "To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff." JA 0105 at 8 (quoting *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008)(emphasis in original)). There can be no doubt that T.M.'s "actual injury" was her continued involuntary confinement at BWMC pursuant to an erroneous administrative agency decision and the specter of forced, imminent, and potentially lethal injections.

The United States Supreme Court and the Fourth Circuit have both recognized that the antipsychotic injections prescribed for T.M. by Dr. Cummings during her involuntary admission "can have serious, even fatal, side effects." *Washington v. Harper,* 494 U.S. 210, 229 (1990); *United States v. Watson*, 793 F.3d 416, 419 (4th Cir. 2015). Known side effects include "dystonia, a severe involuntary spasm of the

19

upper body, tongue, throat, or eyes, . . . akasthesia (motor restlessness, often characterized by an inability to sit still); neuroleptic malignant syndrome (a relatively rare condition which can lead to death from cardiac dysfunction); and tardive dyskinesia, . . . a neurological disorder, irreversible in some cases, that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face." *Harper*, 494 U.S. at 230. This is explicitly alleged in the Complaint. *See* JA 0044-45 ¶ 185.

> **B. The *Rooker-Feldman* doctrine does not apply because Plaintiffs are not complaining of an injury caused by a state-court judgment itself.**

Plaintiffs in this case challenge the actions of BWMC, conditioning T.M.'s freedom upon her capitulation to the unconstitutional conditions in the Consent Order. In other words, T.M.'s injuries arise from BWMC's behavior, not the Consent Order itself. *Davani v. Dept. of Transp.,* 434 F.3d 712, 719 (4th Cir. 2006)("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state court judgment.")(citing *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)). Again, citing *Hoblock,* this Court more recently put it this way: "A plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state court decision without being 'produced by' the state

court judgment." *Hulsey v. Cisa,* 947 F.3d 246, 250 (4th Cir. 2020)(quoting *Hoblock*, 422 F.3d at 88.)).  The Second Circuit's discussion in *Hoblock* is illustrative:

> Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading – by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not. In the child-custody example given above, if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child. The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments. The challenge is to identify such suits.
>
> The following formula guides our inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, *when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it*. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88 (emphasis added). As was the case in *Hulsey,* Plaintiffs in this action are not complaining of an injury "caused by a state court judgment," *Hulsey,* 947 F.3d at 250 (citing Exxon, 544 U.S. at 284).  Unlike *Hoblock*'s example of state agents taking custody of a child pursuant to a state-court judgment, BWMC's actions, *i.e.,* their unlawful confinement of T.M. against her will and the will of her father, who is also her designated healthcare agent, was not authorized by or done pursuant to the Consent Order.  Plaintiffs do not challenge any action taken pursuant to the Consent Order; rather the state court simply "ratified" or "acquiesced in" the

agreement of the parties without addressing the unconstitutional nature of the agreement.[5]  For this reason, the *Rooker-Feldman* doctrine does not apply to this action. *See Hulsey*, 947 F.3d at 250; *accord Thana*, 827 F.3d at 321 (plaintiff's claims were "premised on injuries allegedly caused by the [State] Board" rather than injuries arising from the consent order at issue in *Thana*).

"Consent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes." *Local No.93, Int. Asso. Of Firefighters et al. v. Cleavland,* 478 U.S. 501, 519 (1986) (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235-237 (1975)). Because the parties, not the court, define their terms, "the decree itself cannot be said to have a purpose; rather the parties have purposes, . . ." *Local No. 93*, 478 U.S. at 522 (citing *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)). "Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Id.* (citing *United States v. Ward Baking Co.,* 376 U.S. 327 (1964)). Importantly, "the fact that the parties have consented to the relief contained in a decree does not render their action immune from attack on the ground that it violates . . . the Fourteenth Amendment" or any other constitutional

---

[5] The District Court found this difference immaterial.  JA 0105 ("That T.M. 'do[es] not challenge any action taken *pursuant* to the Consent Order' makes no difference.").

protection. *Local No. 93*, 478 U.S. at 526. That is what the Plaintiffs have attempted to do here.

The Complaint alleges at UMMSC and BWMC are state actors. JA 0017-18 ¶¶ 21-22. Accordingly, the "unconstitutional conditions doctrine" provides the basis of Plaintiffs' challenge to the Consent Order. The "unconstitutional conditions doctrine" reflects "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Although the unconstitutional conditions doctrine arises most often in First Amendment contexts, the doctrine is not limited to infringement of First Amendment rights. *See Koontz,* 570 U.S. at 604, 608 (citing e.g., *Memorial Hospital et al. v. Maricopa County et al.*, 415 U.S. 250 (1973)(finding unconstitutional a requirement that conditioned free healthcare upon a one-year residency requirement as violative of liberty interests protected by the Fourteenth Amendment). Indeed, *Koontz* itself applied the doctrine to infringement of rights protected by the Fifth Amendment. *Koontz,* 570 U.S. at 604.

In this case, the Complaint alleges that state actors (UMMSC and BWMC) coerced T.M. into giving up certain of her fundamental liberty interests protected by the Fourteenth Amendment to gain her freedom and to avoid dangerous involuntary injections of antipsychotic drugs. As the Complaint alleges, involuntary

"commitment to a mental hospital produces 'a massive curtailment of liberty,'" *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980)(quoting *Humphrey v. Cady*, 405 U.S. 504, 509 (1972)), and every adult, including T.M., "has a right to determine what shall be done with [her] own body." *Cruzan v. Director, Mo. Dept. of Health*, 497 U. S. 261, 269 (1990); *Washington v. Harper*, 494 U. S. 210, 229, 236 (1990)(forced administration of similar antipsychotic drugs). The Constitution, specifically the liberty interests protected by the Fourteenth Amendment, restricts the power of government to interfere with a person's medical decisions or compel her to undergo medical procedures or treatments against her will. *Id.* Through the Consent Order, the state actor defendants achieved such restrictions by conditioning T.M.'s freedom upon her agreement to give up her right to make her own healthcare decisions forever.

In the District Court's view, "T.M.'s claims plainly attack the Consent Order itself, not the underlying conduct of Defendants," but this is incorrect. JA 0105. *See Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 202 (4th Cir. 1997) (distinguishing between "actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted."). Relying on decisions from the Seventh and First Circuits, the District Court concluded that "[w]hen a plaintiff claims constitutional or other injuries suffered upon entry of a consent order, she is claiming that a state court

judgment caused her injury." *Id.* (citing *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) and *Efreom v. McKee*, 46 F.4th 9, 18 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023)).  Neither case, however, involves allegations of a consent order obtained under duress to secure plaintiff's release from custody to avoid imminent involuntary injections of antipsychotic drugs.  In other words, the unconstitutional conditions doctrine was not relevant in either case.

In *Johnson,* Mr. Johnson acquired a "certificate of purchase" on a parcel of land for which taxes had not been paid. *Johnson*, 551 F.3d at 566. Ordinarily the holder of a certificate of purchase can acquire a tax deed if the owner of the property does not pay the delinquent taxes, but, in this instance, it turned out that the County had been mistaken about the delinquency. *Id.*  With Mr. Johnson's explicit consent, a state circuit court judge entered an order directing the tax sale be rescinded, Mr. Johnson's money be returned, and the certificate of purchase be cancelled. *Id.*  A year later, without mentioning the consent decree in his complaint, Mr. Johnson sued, alleging the failure to issue him a tax deed violated his constitutional rights to due process, equal protection and freedom from illegal seizures. *Johnson*, 551 F.3d at 567.  There was no allegation that Mr. Johnson hadn't received a full refund. *Id.*  *Rooker-Feldman* applied because Mr. Johnson's claimed injury—the refusal to give him a tax deed—resulted because of the consent decree. *Johnson*, 551 F.3d at 568 ("In essence, Mr. Johnson is complaining because the defendants are following the

circuit court's order). By contrast, the instant case does not allege injury from any action or inaction to follow the Consent Order, but instead seeks to challenge the process by which the Consent Order was imposed.

In *Efreom,* a class action lawsuit related to Rhode Island's retirement system was settled in the Rhode Island Supreme Court and state law was amended as required by the settlement agreement. *Efreom,* 46 F.4th at 12. Unhappy with the measure of relief afforded by the statutory amendments, retired public employees who were members of the class sued in federal court alleging various provisions of the amendments violated their constitutional rights. *Id.* Nothing in the case suggested that the settlement agreement was obtained by duress or that the unconstitutional conditions doctrine was relevant. Plaintiffs were simply attempting to appeal from the class settlement entered by the highest court in Rhode Island, an action within the narrow scope of the *Rooker-Feldman* doctrine.

### C. Under the plain language of 28 U.S.C. § 1257(a), the *Rooker-Feldman* doctrine applies only to appellate jurisdiction over a final judgment from the highest court of a State in which the decision could be had.

The plain language of 28 U.S.C. § 1257(a) indicates that the only decisions reviewable under § 1257(a) are final decisions "by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). Thus, "[T]he *Rooker-Feldman* doctrine applies [only to final] state court decisions, not ongoing state court proceedings." *Justice*, 41 F.4th at 341 (quoting *Jones v. McBride,* 2022 U.S. App.

LEXIS 5934, 2022 WL 670873, at *1 (4th Cir. Mar. 7, 2022)(citing *Hulsey*, 947 F.3d at 250)); *accord Accohannock Indian Tribe v. Tyler*, 2021 U.S. Dist. LEXIS 238683, at *65-66, 2021 WL 5909102 (D. Md. Dec. 14, 2021)(noting a majority of Circuits find that an order pending appeal from a state trial court is not sufficiently final to apply the *Rooker-Feldman* doctrine.). This Court in *Thana* indicated that after *Exxon's* instruction to confine the *Rooker-Feldman* doctrine to "cases of the kind from which the doctrine acquired its name," the *Rooker-Feldman* doctrine would not be implicated unless a federal court has been called upon to "exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which the decision could be had,' 28 U.S.C. § 1257(a), . . . as was the case in both *Rooker* and *Feldman*." *Thana*, 827 F.3d at 321 (citing *Exxon*, 544 U.S. at 284, 291); *accord Payne v. Ford Motor Credit Co., LLC*, 2020 U.S. Dist LEXIS 160755, at *9, 2020 WL 5250287 (D. Md. Sept. 3, 2020)("the Fourth Circuit recently restricted application of the *Rooker-Feldman* doctrine to situations in which a district court is 'called upon to exercise appellate jurisdiction' over a final judgment from 'the highest court of a State in which a decision could be had.'")(quoting *Thana*, 827 F.3d at 321).

This Court's decision in *Thana* is controlling. In *Thana*, the Maryland Supreme Court, formerly known as the Court of Appeals, declined to grant certiorari while the federal lawsuit was pending. *Thana*, 827 F.3d at 316. This Court looked

to the plain language of 28 U.S.C. § 1257(a), the statute upon which the *Rooker* and *Feldman* cases are based and concluded that without a challenge to a decision from the Maryland Supreme Court, the plaintiff had not frustrated the U.S. Supreme Court's exclusive appellate jurisdiction conferred under the relevant statute. *Thana*, 827 F.3d at 321 (quoting 28 U.S.C. § 1257(a) as providing that '[f]inal judgments or decrees rendered by *the highest court of a State in which a decision could be had*, may be reviewed by the Supreme Court' in cases raising federal questions") and *Exxon,* 544 U.S. at 291 (noting that, in both *Rooker* and *Feldman,* the plaintiff "filed suit in federal court *after the state proceedings ended*")(emphasis added by this Court)). Just as *Thana* did not involve a challenge to a decision from Maryland's highest court, neither did this case. Neither case fits the profile of *Rooker* or *Feldman.*

In this case, the District Court delayed ruling on the fully briefed motion to dismiss for more than five months. Then, on July 18, 2024, without provocation from the parties, the Court *sua sponte* directed Plaintiffs to provide a "status update on the pending state court appeal. . . ." JA 0083. Upon learning the Appellate Court of Maryland had temporarily stayed the case pending the federal court's decision, the District Court immediately dismissed under *Rooker-Feldman*.[6] In the District

---

[6] The Appellate Court of Maryland has so far continued the temporary stay pending this Court's decision in this appeal. *See* Add. 0014.

Court's view, the existence of a temporary stay in the Appellate Court of Maryland renders "the Consent Order sufficiently final to trigger *Rooker-Feldman* as to T.M.'s claims." JA 0106. But the stay is merely a temporary delay in the proceedings, it does not mark the end of the proceedings in this case.

Despite the strong language in *Thana* regarding the plain language of § 1257(a), there remains confusion in the District Courts regarding this issue in the Fourth Circuit. *Compare Payne v. Ford Motor Credit Co., LLC*, 2020 U.S. Dist. LEXIS 160755, at *9, 2020 WL 5250287 (D. Md. Sept. 3, 2020) *with Accohannock Indian Tribe v. Tyler*, 2021 U.S. Dist. LEXIS 238683, at *65-66, 2021 WL 5909102 (D. Md. Dec. 14, 2021). Even in this case, "[t]he [District] Court is no longer persuaded that the pending state appeal, even if it had not been stayed, would necessarily foreclose applying *Rooker-Feldman* to T.M.'s claims" because "the Fourth Circuit has not specifically determined whether orders pending appeal from a state trial court are sufficiently final as to fall within *Rooker-Feldman*." JA 0107 at n.4.

This Court's recent discussion of finality for purposes of 28 U.S.C. § 1291 appellate jurisdiction is instructive. *See Sonda v. W.Va. Oil & Gas Conservation Comm'n*, 92 F.4th 213, 217-18 (4th Cir. 2024). There, this Court explained that "Section 1291 confers jurisdiction on courts of appeals over 'appeals from all final decisions of the district courts of the United States,' 28 U.S.C. § 1291, and the 'usual

rule' is that a stay order 'is not ordinarily a final decision for purposes of § 1291,'" *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983)). The Supreme Court has, however, recognized a narrow exception "where . . . the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." *Id.*; *see also Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962)(*per curiam*)). "The [Supreme] Court explained that in such cases, an abstention stay order effectively puts the parties out of court—*i.e.*, 'effectively out of federal court.'" *Sonda,* 92 F.4th at 217-18 (quoting *Moses H. Cone*, 460 U.S. at 9 n.8.). Such a "stay order amounts to a dismissal of the suit." *Moses H. Cone*, 460 U.S. at 10. Thus, a party who objects to such a stay may "appeal . . . [the district court's] refusal to exercise federal jurisdiction." *Id.* "In addition, the [Supreme] Court has explained that it does not matter whether the stay order anticipated an ultimate return to federal court or the possibility that the state-court ruling would have preclusive effect on any subsequent post-stay federal proceeding." *Id.* at 218. To concede in that sort of jurisdictional surrender would violate the federal courts' "virtually unflagging obligation" to exercise jurisdiction. *Moses H. Cone*, 460 U.S. at 15 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).

Here, the District Court surrendered jurisdiction because of a temporary stay order that *does not* under any interpretation end the state proceedings. The District

Court cites *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005) for the proposition that "if the state action has reached a point where neither party seeks further action, then the state proceedings have functionally 'ended' for purposes of *Rooker-Feldman*," JA 0106, however, that case does not support the District Court's position. As an example of the circumstances the First Circuit was talking about, the First Circuit said: "For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." *Federacion de Maestros*, 410 F.3d at 24. That is clearly not the case here where T.M. filed a timely appeal to the Appellate Court of Maryland to preserve her rights. That is not improper. *See Exxon*, 544 U.S. 280, 294 n.9 ("There is nothing necessarily inappropriate . . . about filing a protective action.")(citing *e.g. Union P. R. Co. v. Department of Revenue*, 920 F.2d 581, 584, and n.9 (9th Cir. 1990)(noting that the railroad company had filed protective actions in state court to prevent expiration of the state statute of limitations) and *Government of Virgin Islands v. Neadle*, 861 F. Supp. 1054, 1055 (MD Fla. 1994)(staying an action brought by plaintiffs "to protect themselves" in the event that personal jurisdiction over the defendants failed in the United States District Court for the Virgin Islands)).

It remains true today that Plaintiffs have not "sought to bypass the Supreme Court's jurisdiction under 28 U.S.C. § 1257(a)," rather they have challenged the

judgment by appealing it to the Maryland Appellate Court, "thereby remaining on track for potential review by the U.S. Supreme Court" despite a temporary delay in those proceedings. *Thana*, 827 F.3d at 322. The District Court found this argument persuasive "when T.M. first brought the appellate case to the attention of th[e] Court on July 3, 2023" but, in the Court's opinion, it is no longer persuasive "in light of the stay of the pending appeal." JA 0106.

Thus, it appears the District Court, by delaying its ruling for more than five months after all briefing was complete, intended to "run out the clock" until the state appellate courts ruled first, thereby possibly precluding the federal case under state preclusion principles. *See Thana*, 827 F.3d at 323 (holding open the possibility that state preclusion principles might bar the action at another time); *Exxon*, 544 U.S. at 293 ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").

The District Court's surrender of jurisdiction when the stay order simply delays temporarily the state appellate proceedings runs counter to the Court's "virtually unflagging obligation" to exercise jurisdiction. *Moses H. Cone*, 460 U.S. at 15; *Deakins v. Monaghan,* 484 U.S. 193, 203 (1988)("[T]he federal courts have a virtually unflagging obligation to exercise their jurisdiction…." (internal quotation marks omitted)). Indeed, the Supreme Court has long instructed that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by

Congress." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996); *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 415 (1964)("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.")(quoting *Willcox v. Consol. Gas Co.,* 212 U.S. 19, 40 (1909)). The District Court in this case improperly relied upon the *Rooker-Feldman* doctrine to abdicate its duty to exercise the jurisdiction Congress has conferred upon it.

> **D.    The *Rooker-Feldman* doctrine applies only to cases brought by "state court losers."**

The *Rooker-Feldman* doctrine applies only to "state court losers."[7] *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The *Rooker-Feldman* doctrine "bars a losing party in state court [only] 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Exxon*, 544 U.S. at 287 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006

---

[7] This means that *Rooker-Feldman* "does not bar actions by a nonparty to the earlier state suit." *Id.* at 464 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994)); *see also Karcher v. May*, 484 U.S. 72, 77 (1987)("The general rule [is] that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom."). In this case, neither J.M. nor A.M. were parties to the underlying habeas action in which the Consent Order was entered. The District Court dismissed their claims "without prejudice" because in the Court's view their First Amendment claims were not sufficiently articulated in the Complaint. JA 0108-110. Should this case be remanded, Plaintiffs intend to seek leave to amend their complaint to more robustly assert their First Amendment claims.

(1994)(emphasis added)); *Exxon*, 544 U.S. at 284 (the doctrine only applies where "state-court losers [are] complaining of injuries caused by state-court judgements.").

Although T.M. lost at the administrative agency level resulting in certification of her involuntary commitment to BWMC's psychiatric department, she won in the Circuit Court on January 3, 2024 when Judge Pamela Albin ruled "that the ALJ's legal conclusions as to the validity and operability of [T.M.'s] Advanced Mental Health Directive [were] legally erroneous" and therefore "the ALJ should have abided by Petitioner's Directive and allowed Petitioner's Healthcare Agent, [J.M.], to make decisions regarding Petitioner's BWMC admission." *In re: T.M.,* Case No.: C-02-CV-23-000842 (Cir. Ct. A.A. County 2023).[8]  This ruling means that T.M.'s involuntary commitment to BWMC's psychiatric department was unlawful.  Had T.M. still been in custody at the time of Judge Albin's ruling, BWMC would have been required to immediately release her.

T.M.'s federal lawsuit commenced approximately six months after the Circuit Court ruled T.M. had been unlawfully confined at BWMC.  T.M.'s habeas lawsuit commenced before Judge Albin ruled in the case challenging BWMC's refusal to

---

[8] This decision is attached in the Addendum.  This Court may take judicial notice of the fact that the ruling was in favor of T.M. *See e.g., Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989)(appellate court may take judicial notice of state court proceedings); *Goldfarb v. Mayor & City Council of Balt.,* 791 F.3d 500, 508-09 (4th Cir. 2015)(appellate court may take judicial notice of the same materials as could a district court, including matters of public record).

honor T.M.'s Advance Directive. Like that case, the state habeas case was a collateral challenge to the administrative agency's certification of T.M.'s involuntary commitment. While the Consent Order was entered in the related lawsuit seeking habeas relief, *i.e.,* a judicial order for BWMC to release T.M. from custody, it is difficult to characterize her as a "state court loser." She simply secured her release sooner through the Consent Order, but she was always entitled to be released. In *Hulsey v. Cisa*, 947 F.3d 246, 251 (4th Cir. 2020), Hulsey prevailed in one defamation case brought by Mr. Limehouse, Sr., and while that case was on appeal, Hulsey settled a second case also alleging defamation brought by Mr. Limehouse, Jr. Hulsey was not considered a state court loser for purposes of the *Rooker-Feldman* doctrine even for the second case that resolve by settlement agreement. *Hulsey*, 947 F.3d at 251 (citing *Lance,* 546 U.S. at 466 and *Exxon,* 544 U.S. at 284). The only procedural difference here is the timing of T.M.'s win in state court; it came after the Consent Order settling the habeas case. There is a very good reason: T.M. was potentially within hours of being forced to take antipsychotic drug injections having potentially serious and even life-threatening consequences when her attorneys capitulated and agreed to the terms in the Consent Order.[9]

---

[9] The Consent Order is not signed by T.M., only her attorneys signed the document. JA 0123-125.

### III. The Complaint contains sufficient factual allegations regarding J.M. and A.M.'s claims to avoid dismissal under Rule 12(b)(6).

In *Johnson v. City of Shelby*, 574 U.S. 10 (2014), the Supreme Court "summarily reversed" a grant of summary judgment for the plaintiff's failure to identify a legal theory in support of his or her claim for relief. *Johnson*, 574 U.S. at 11 ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.")(citing 5 Wright & Miller, Federal Practice and Procedure, §1219, at 277-278 (2014)). The Court distinguished its decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U. S. 662 (2009), because those decisions "concern the *factual* allegations a complaint must contain to survive a motion to dismiss." *Johnson*, 574 U.S. at 11 (emphasis by the Court). "A plaintiff, they instruct [*Twombly* and *Iqbal*], must plead *facts* sufficient to show that her claim has substantive plausibility." *Id.*

If the instant Complaint contains sufficient factual allegations to support J.M. and A.M.'s right to relief, then it should not have been dismissed for failing to expressly cite a legal theory. *Johnson*, 574 U.S. at 11. The following factual allegations are taken directly from the Complaint:

> T.M.'s father, J.M., who previously had been appointed as T.M.'s Health Care Agent to make all medical decisions for T.M. in the event she could not do so for herself, and who expressly was granted the power and authority "to approve [T.M.'s] admission to or release from a psychiatric hospital or unit," attempted to intervene on T.M.'s behalf

but the Hospital Defendants refused to recognize J.M. as T.M.'s lawfully designated healthcare agent and refused to release T.M. from custody. JA 0015 ¶ 7.

On April 20, 2023, J.M. sued the BWMC and its parent, the University of Maryland Medical System Corporation, to require them to recognize T.M.'s Advance Medical Directive and J.M.'s appointment as T.M.'s lawfully designated healthcare agent in *J.M. v. Baltimore Washington Med. Ctr., et al.,* Case No. C-02-CV-23-000764 (Cir. Ct. A.A. County 2023). The case was still pending when the "Consent Order" was entered on June 12, 2023. JA 0015-16 ¶ 8.

This action for declaratory and prospective injunctive relief is brought to address Defendants' ongoing deprivations of rights guaranteed by federal statutes, the U.S. Constitution, and the Maryland Declaration of Rights: the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 (through 42 U.S.C. § 1983); and Article 24 of the Maryland Declaration of Rights. JA 0016-17 ¶ 13.

Plaintiff's claims for declaratory and injunctive relief are authorized by 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202 as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure. JA 0017 ¶ 14.

Plaintiff A.M. is an adult person and citizen of the United States who resides in Maryland and is the mother of T.M. JA 0017 ¶ 20.

Defendant UMMS is a "nonprofit, nonstock corporation" in the State of Maryland. Md. Code Ann. Educ. § 13-302(7). UMMS was created by statute. *See id.* § 13-301 *et seq*. All of the voting members of its Board of Directors are appointed by the Governor of Maryland. *Id.* § 13-304(b). According to its authorizing statute, UMMS is intended to serve "the highest public interest" and its purposes "are essential to the public health and welfare" of the State. *Id.* § 13-302(4). UMMS's offices are located at 250 W. Pratt St., Baltimore, Maryland 21201. UMMS accepts federal funds and is a state actor and "governmental entity, that is, an arm or instrumental of government for purposes of Plaintiff's assertion of . . . individual constitutional rights." *See Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 584 (D. Md. 2021); *accord Napata v. Univ. of Md. Med. Sys. Corp.*, 417 Md. 724, 737, 12 A.3d 144, 151 (2011); *see also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995) ("We hold that where, as

here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government *for purposes of the First Amendment*."). JA 0018 ¶ 22 (emphasis added).

Defendant Facility is a corporation organized under the laws of the State of Maryland, with its principal place of business located at 301 Hospital Drive, Glen Burnie, Maryland 21061. The Facility is a wholly owned subsidiary of UMMS and also accepts federal funds and is thus a state actor. *See Hammons v. Univ. of Md. Med. Sys. Corp.*, No. DKC 20- 2088, 2023 WL 121741, at *16 (D. Md. Jan. 6, 2023). JA 0018 ¶ 23.

The "Consent Order" contains no time limitations and purports to control T.M.'s healthcare decisions, including the drugs she must take and the providers she must use in perpetuity. Incredibly, the "Consent Order" also purports to bind T.M.'s parents, *who were not parties to the habeas case in which the order was entered*. Under the "consent order," T.M.'s parents—J.M. and A.M.—**must**: (1) "remind, encourage, and monitor" T.M.'s "ingestion of her prescribed medications" and (2) "immediately notify FIP and the Anne Arundel Crisis Team if [T.M.] becomes non-compliant with her medication." JA 0046 ¶¶ 188-89 (emphasis added).

The Consent Order was also attached to the Complaint as an Exhibit. JA 0123-124. In separate paragraphs, the Consent Order requires the dismissal of several pending cases, including J.M.'s lawsuit against BWMC. *Id.*

Although not a model pleading, the Complaint sets forth sufficient factual allegations to conclude J.M. and A.M.'s First Amendment claims have "substantive plausibility."[10] The failure to identify the legal theory, *i.e.,* to recite the First

---

[10] The United States Supreme Court has "held time and again that freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.'"

Amendment as providing the legal basis for J.M. and A.M.'s claims should not have led to dismissal. *Johnson*, 574 U.S. at 11. The Court simply could have directed plaintiffs to plead a more definite statement of the legal theory or treated the motion to dismiss as a motion for a more definite statement, *Phair v. Zambrana,* 2016 U.S. Dist. LEXIS 63830, 2016 WL 258634 (D. Md. Jan. 19, 2016), or could have granted leave to amend the complaint, Fed. R. Civ. Proc. 15(a)(2).

---

*Janus v. AFSCME, Council 31,* 138 S. Ct. 2448, 2463 (2018)(quoting *Wooley v. Maryland,* 430 U.S. 705, 714 (1977) and collecting cases)). Thus, for First Amendment purposes, "it makes little difference . . . whether the government acts as censor or conductor." *Wash. Post v. McManus,* 944 F.3d 506, 514-15 (4th Cir. 2019). "It is the presence of compulsion from the state itself that compromises the First Amendment." *McManus,* 944 F.3d at 515. The First Amendment "extends 'not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.'" *McManus,* 944 F.3d at 515 (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Of Boston,* 515 U.S. 557, 573 (1995)). In this case, T.M.'s parents disagree with the treatment regime imposed on their daughter by the Defendants and by the Consent Order, which is vastly different from the treatment T.M. had been receiving from her treating psychiatrist successfully for years before T.M. was involuntarily committed to the Baltimore Washington Medical Center. "When speech is compelled, . . . additional damage is done [because] individuals are coerced into betraying their convictions." *Janus,* 138 S. Ct. at 2464. "State judicial action is . . . clearly 'state' action" for purposes of constitutional analysis. *Bell v. Maryland,* 378 U.S. 226, 255 (1964); *see also e.g., Shelley v. Kraemer,* 334 U.S. 1, 14 (1948)("That the action of state courts and judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court."); *Virginia v. Rives,* 100 U.S. 313, 318 (1880)("a State may act through different agencies, -- either by its legislative, its executive, or its *judicial* authorities; . . .")(emphasis supplied).

Moreover, J.M. and T.M.'s claims need not invoke the First Amendment to have "substantive plausibility." The District Court admits that "the Consent Order is unenforceable against [J.M. and A.M.] as non-parties" in the habeas case. JA 0109 n.5 (citing *Bacon v. City of Richmond,* 475 F.3d 633, 643 (4th Cir. 2007)(stating that "settlement agreements are 'not to be used as a device by which A and B, the parties to the decree, can (just because a judge is willing to give the parties' deal a judicial imprimatur) take away the legal rights of C, a nonparty.'")). We agree.[11] *See also Local No. 93, Int. Asso. of Firefighters, et al. v. Cleavland,* 478 U.S. 501, 529 (1986)("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. . . . And, of course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree."). The undisputed fact that the Consent Order imposed obligations on J.M. and A.M. is clearly pled and should have been enough by itself to entitle them to equitable relief regardless of whether those obligations also violated their First Amendment rights.[12]

---

[11] The Defendants also agree! *See* ECF #40-1 and sealed memo at pg. 23 ("The provisions of the Consent Order are unenforceable as to A.M. and J.M. because A.M. and J.M. are not parties to the Consent Order, nor are they intended beneficiaries of the Consent Order.").

[12] J.M. and T.M. filed a motion for summary judgment arguing "[n]ot only does the Consent Order impose legal obligations on non-parties (J.M. and A.M.) but also the

The District Court is wrong, however, to predict that, "[e]ven if Plaintiffs had alleged First Amendment claims in the Complaint, it is unlikely that J.M. and A.M. would be able to allege facts sufficient to support a plausible First Amendment claim or to support their standing in this case." JA 0110 n.5. In *Overbey v. Mayor of Baltimore,* 930 F.3d 215 (4th Cir. 2019), this Court discussed the legal requirements for a third-party to challenge a settlement agreement entered between the government and a private plaintiff. The settlement agreement in *Overbey* was between the City of Baltimore and a civil rights plaintiff who had sued the city alleging police misconduct. As part of the settlement agreement, the plaintiff agreed to a non-disparagement clause that prohibited the plaintiff from discussing the case with the media, a violation of which would result in forfeiture of half of the settlement. *Overbey*, 930 F.3d at 219. The Baltimore Brew, a local news agency, challenged the settlement agreement arguing the City's policy of making silence a condition of settlement in police brutality cases prevented Brew from interviewing plaintiffs in such cases and thereby violated Brew's First Amendment right to gather and report the news. This Court found these facts were sufficient for Brew to have

---

obligations it purports to impose on J.M. and A.M. clearly violate J.M.'s and A.M.'s constitutional rights. Such an Order cannot stand and must be declared invalid and void *ab initio*." ECF #60 at 6. The District Court never reached the motion for summary judgment.

standing to challenge the City's policy of requiring non-disparagement clauses as a condition of settlement in the case. *Overbey,* 930 F.3d at 226.

"To establish standing under Article III of the Constitution," said this Court, "a plaintiff must show: '(1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Overbey*, 930 F.3d at 226-27 (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)(quoting *Lujan,* 504 U.S. at 560).

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Robins*, 578 U.S. at 339. To be "concrete," an injury must be "real" in the sense that it must "actually exist," however, the injury need not be tangible. *Robins*, 578 U.S. at 340. Thus, injury to intangible constitutional rights, such as those embodied in the First Amendment, constitute "concrete" injuries. *Id.* (citing e.g., *Pleasant Grove City v. Summum*, 555 U. S. 460 (2009)(free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U. S. 520 (1993)(free exercise)).

In this case, J.M. and A.M. clearly have standing under Article III of the Constitution to challenge the Consent Order. As explained *supra*, the Consent Order violates their First Amendment rights even more directly than did the settlement agreement offend Brew's First Amendment rights in *Overbey*. While Brew suffered indirect injury to its ability to gather and report the news in *Overbey*, here the Consent Order identifies A.M. and J.M. by name and imposes directly upon them obligations of forced speech and monitoring. The Consent Order also directly injures J.M.'s right to maintain separate litigation against the hospital defendants by requiring that his pending lawsuit be dismissed with prejudice, violating his First Amendment right to petition the government to redress grievances. These are particularized and concrete injuries to J.M. and A.M. personally.

The causal connection between the Consent Order and the injuries to J.M. and A.M. (the second element for Article III standing) cannot be questioned—they are identified by name in the Consent Order itself. Finally, a favorable decision would redress the injuries to J.M. and A.M., who would no longer be required to report their daughter's non-compliance with her state-mandated treatment regime to state authorities, and J.M. would be free to seek redress in court for his grievances against the hospital defendants.

# CONCLUSION

Since the Supreme Court decided *Exxon* nearly twenty years ago, this Court has not agreed in any published opinion that the *Rooker-Feldman* doctrine deprived a federal district court of jurisdiction. The *Exxon* Court found the *Rooker-Feldman* doctrine was "sometimes construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts," and to emphasize "the narrow ground occupied by *Rooker-Feldman*," the Court instructed federal courts to confine the doctrine to cases that procedurally mirror the *Rooker* and *Feldman* cases themselves. *Exxon,* 544 U.S. at 283-284. For all or any of the independent reasons discussed above, the instant case falls outside the *Rooker-Feldman* doctrine's narrow scope and therefore does not deprive the District Court of jurisdiction in this case. Additionally, J.M. and A.M.'s claims should not have been dismissed for failing to allege a legal theory in the Complaint. *Johnson*, 574 U.S. at 11. Therefore, this Court should reverse the District Court's decision to dismiss the action for want of jurisdiction and remand the case for further proceedings in the District Court.

Respectfully Submitted,

/s/Ray M. Shepard_____
Ray M. Shepard, Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: [Ray@Shepard.Law](mailto:Ray@Shepard.Law)

*Attorney for Appellants, T.M., J.M., & A.M.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,479 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Time New Roman font.

Respectfully Submitted,

/s/Ray M. Shepard_____
Ray M. Shepard, Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law

*Attorney for Appellants, T.M., J.M., & A.M.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM\ECF System, which will send notice of such filing to the following registered users:

Mark S. Saudek
Gallagher Evelius & Jones, LLP
218 N. Charles Street, Suite 400
Baltimore, MD 21201

*Counsel for Appellees*

/s/Ray M. Shepard
Ray M. Shepard, Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law

*Attorney for Appellants, T.M., J.M., & A.M.*

# ADDENDUM

# TABLE OF CONTENTS

Page

Addendum 1 - 01/04/2024 Memorandum Opinion.……………….…....Add. 0001

Addendum 2 – 07/10/2024, 11/13/2023 and 03/07/2024 Orders
from the Appellate Court of Maryland.………………………..............Add. 0011

Addendum 3 – 08/28/2024 Order from the Appellate Court of
Maryland.……………………………………………………………..Appx. 0014

| IN THE MATTER OF | * | IN THE |
| | * | CIRCUIT COURT FOR |
| T.M. | * | ANNE ARUNDEL COUNTY |
| | * | MARYLAND |
| | * | Case No.: C-02-CV-23-000842 |

*　*　*　*　*　*　*　*　*　*　*　*　*

## MEMORANDUM OPINION

This matter came before the Court on November 27, 2023 for an administrative agency appeal of the decision of the Maryland Office of Administrative Hearings ("OAH"). On April 11, 2023, an Administrative Law Judge ("ALJ") signed a Certification pursuant to Maryland Health General Code § 10-632 authorizing the Petitioner be retained by Baltimore Washington Medical Center ("BWMC") as an involuntary psychiatric patient. Petitioner filed the instant Petition for Judicial Review on May 5, 2023. Petitioner's counsel and counsel for BWMC appeared before the Court and presented oral arguments. Upon consideration of the memoranda submitted by both parties and the oral arguments, the Court finds the ALJ erred in issuing the Certification. Thus, the Court reverses the ALJ's decision.[1]

## I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 23, 2023, Petitioner was brought to the emergency room at BWMC after her mother completed an emergency petition for psychiatric evaluation. Petitioner's mother alleged that Petitioner was exhibiting psychosis and threatening behaviors. A week later, Petitioner was admitted to the inpatient unit at BWMC. An involuntary commitment hearing was scheduled for April 4, 2023 but was postponed for one week with the hopes that an involuntary commitment

---

[1] The Court does not remand this matter because Petitioner has since been released from commitment at BWMC, and the parties agreed that a remand would not be necessary.

01/04/2024 DLF

could be avoided with an additional week of inpatient treatment. The hearing was then held on April 11, 2023, and the ALJ found that Petitioner met the criteria for commitment and ordered Petitioner to be retained at BWMC.

This was not the first time Petitioner has been admitted, as she suffers from schizophrenia chronic paranoid type. During the commitment hearing, Dr. Thomas Cummings, Petitioner's treating physician, testified as to Petitioner's current hospitalization and her previous hospitalization in November–December 2022. Dr. Cummings stated that Petitioner's signs and symptoms of her schizophrenia are extensive, severe, and acute psychosis. She has delusions and has been hostile. She has very severe auditory perception in her head and displays behavior indicating that she is responding to voices in her head. Petitioner will speak to body parts such as her hands. She has very poor self-awareness and self-care. She does not shower, brush her teeth, and wash her hair. Petitioner displays aggressive and agitated behavior towards others. She raises her hands and tells staff members and patients that she will snap their necks while making the same motion with her hands. Finally, Dr. Cummings states that Petitioner is a danger to herself because she is unable to protect herself safely.

On April 11, 2023, an ALJ presided over Petitioner's involuntary admission hearing. Petitioner was represented by counsel. The hospital's legal counsel and presenter appeared on behalf of BWMC. Dr. Cummings and Petitioner's father, Joseph Mancuso, testified. The hospital argued that they met their burden in proving the five factors for involuntary admission. Petitioner argued that Mr. Mancuso should be able to make the decision as to Petitioner's involuntary or voluntary status because he is Petitioner's Health Care Agent pursuant to the Advance Mental Health Directive executed by Petitioner. Additionally, Petitioner argued that she was competent to make the decision to stay at the hospital voluntarily, and the hospital should have allowed her to

Add. 0002

sign the voluntary admission form. The hospital vaguely argued that they had concerns with the document's validity and that is why they did not honor the document; however, the validity of the document was never formally challenged. Ultimately, the ALJ found the hospital met its burden for involuntary admission and did not find the Directive persuasive. She explained that, even though the document may be legally important for many reasons, neither party argued that the hospital is bound by the document. Thus, the ALJ did not allow Mr. Mancuso to be Petitioner's Agent and make decisions on her behalf.

On April 28, 2023, Petitioner filed the instant Petition for Judicial Review of the ALJ's decision. Petitioner argues that the ALJ committed reversible error in finding that neither the Petitioner nor her designated Health Care Agent could sign a voluntary admission request. Petitioner presents three questions encompassing the legal issues for review:

1. Did Petitioner have the right and ability to be a voluntary patient, thereby requiring merits release at the hearing?

2. If Petitioner was found incapable of signing the voluntary admission document, was the Healthcare Agent permitted to do so, thereby requiring a merits release at hearing?

3. Was the ALJ permitted or correct to disregard the Advance Directive, either for the reasons stated, or for any legal reason?

II.  STANDARD OF REVIEW

The standard of review of an administrative agency decision is governed by the Maryland Administrative Procedure Act. Specifically, a reviewing court may reverse an agency determination only if the determination:

> (i) is unconstitutional;
> (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
> (iii) results from an unlawful procedure;

3

> (iv) is affected by any other error of law;
> (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
> (vi) in a case involving termination of employment or employee discipline, fails to reasonably state the basis for the termination or the nature and extent of the penalty or sanction imposed by the agency; or
> (vii) is arbitrary or capricious.

MD. CODE ANN., STATE GOV'T § 10-222(h)(3). The Appellate Court explained the application of this standard in *Baltimore Lutheran High School Assoc. v. Employment Security Admin.*:

> [A] reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decision of an administrative agency, but it must not itself make independent findings of fact or substitute its judgment for that of the agency.
> ***
> The scope of review is limited to whether a reasoning mind could have reached the factual conclusion the agency reached.

302 Md. 649, 662, 490 (1985).

There are different standards in reviewing ALJs' findings of fact and conclusions of law. *J.H. v. Prince George's Hospital Center*, 233 Md. App. 549, 578 (2017). For findings of fact, the court's review "'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings[.]'" *Id.* (quoting *Bd. Of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–68 (1999)). For conclusions of law, specifically in the context of involuntary admission hearings, the "review of the ALJs' conclusions of law is not so narrow." *Id.* This is because OAH is delegated the authority to preside over these hearings on behalf of the Maryland Department of Health and Mental Hygiene, and the ALJ does not have "subject matter expertise traditionally present when an agency sits in the quasi-judicial role." *Id.* at 580-51. Thus, "the deference normally accorded agencies in interpreting the statutes and regulations they administer does not apply to the ALJs' decisions" in involuntary admissions proceedings. *Id.* at 580. Accordingly, the ALJs' legal conclusions are reviewed *de novo. Id.* at 581.

4

III.    DISCUSSION

   A.    *Advanced Mental Health Directives*

Essential to Petitioner's argument is the Advanced Mental Health Care Directive executed by Petitioner on July 19, 2022. During oral argument, Petitioner stated that she and her family decided to execute the Directive upon advice of separate legal counsel. Mr. Mancuso inquired about how to best protect Petitioner in the event she experiences a mental health crisis. When presented with viable options, Petitioner and Mr. Mancuso decided to execute this document because it was the least restrictive means to accomplish the ultimate goal in assisting Petitioner in times of crisis. Thus, Petitioner used the form template provided by the Maryland Department of Health.[2] Notably, on instructions for filing out the template form, the following is printed at the top: "**NOTICE:** *This is an important legal document. Before signing this document, you should know these important facts.*"

Not only does the Department of Health provide a template, but the use of mental health directives is also statutorily supported. "An individual who is competent may make an advance directive to outline the mental health services which may be provided to the individual if the individual becomes incompetent and has a need for mental health services either during, or as a result of, the incompetency." MD. CODE ANN., HEALTH-GEN. § 5-602.1(b). A directive may include the following:

> (1) The designation of an agent to make mental health services decisions for the declarant;
> (2) The identification of mental health professionals, programs, and facilities that the declarant would prefer to provide mental health services;
> (3) A statement of medications preferred by the declarant for psychiatric treatment; and

---

[2] The form can be found here: https://health.maryland.gov/bha/Pages/newforms.aspx.

5

Add. 0005

(4) Instruction regarding the notification of third parties and the release of information to third parties about mental health services provided to the declarant.

§ 5-602.1(d). The directive must also comply with the procedures outlined in § 5-602. § 5-602.1(c)(1). Specifically, the directive must be "dated, signed by or at the express direction of the declarant, and subscribed by two witnesses in the physical presence or electronic presence of the declarant." § 5-602(c)(1)(i). "[A]ny competent individual may serve as a witness to an advance directive, including an employee of a health care facility, nurse practitioner, physician assistant, or physician caring for the declarant if acting in good faith." § 5-602(c)(2)(i). However, the health care agent cannot serve as a witness, and "[a]t least one of the witnesses must be an individual who is not knowingly entitled to any portion of the estate of the declarant or knowingly entitled to any financial benefit by reason of the death of the declarant." § 5-602(c)(2)(ii)-(iii).

The Maryland Office of Attorney General ("OAG") issued an opinion as to "whether a facility that provides treatment for individuals with mental disorders may accept an individual for voluntary admission at the request of a health care agent for the individual." 91 Md. Op. Att'y Gen. 3 (2006). OAG concluded the following:

> A facility that provides treatment for individuals with mental disorders may accept an individual for voluntary admission at the request of a health care agent for the individual if: (1) the health care agent is acting within the scope of his or her authority under a then-effective advance directive; (2) the health care agent will monitor the circumstances of the patient's course of treatment so as to be able to exercise judgment about the patient's retention or release; and (3) the patient does not express disagreement with the voluntary admission.

*Id.* To come to this conclusion, OAG discussed the history of health care directives in Maryland. *Id.* at 4-7. Then, OAG discussed the use of these directives for mental health services, which begun in 2001 after the General Assembly enacted § 5-602.1. *Id.* at 7. This law is still in effect today. OAG stated that the statute "confirms the right of a competent individual to make an advance

directive 'to outline the mental health services which may be provided to the individual if the individual becomes incompetent,' to designate 'an agent to make mental health services decisions for the [individual],' or both." *Id.* (quoting § 5-602.1(b) and (d)(1)).

The OAG opinion also discusses the operability and enforceability of Advanced Mental Health Care Directives. "When a health care agent seeks to obtain the voluntary admission of an individual to a facility, the facility should carefully review the content of the advance directive." 91 Md. Op. Att'y Gen. 9 (2006). The facility must ensure that the health care agent has the authority, as evidenced by the directive, to request admission. *Id.* The individual may revoke the health care agent's authority under certain circumstances, but it is important to determine that the individual has the capacity to do so. *Id.* Even when a health care agent has the authority to voluntarily admit the individual, the requirements laid out in § 10-609(c)[3] must still be met. Additionally, the individual must not express disagreement with the voluntary admission. The individual does not need to be competent in order to disagree. *Id.* at 11. This provision is to "protect patients who lack capacity from being coerced, without judicial oversight, into treatment to which they object." *Id.*

   B.    *Administrative Law Judge's Decision*

As stated above, Petitioner presented three questions for judicial review. The first question concerns whether Petitioner had the right and ability to be a voluntary patient. In reviewing the transcript and the symptoms presented by Dr. Cummings at the Hearing, the Court finds that Petitioner did not have the ability to be a voluntary patient. For voluntary commitment, the

---

[3] (1) The individual has a mental disorder; (2) The mental disorder is susceptible to care or treatment; (3) The individual understands the nature of the request for admission; (4) The individual is able to give continuous assent to retention by the facility; and (5) The individual is able to ask for release.

Add. 0007

individual must either "(1) [s]ubmit a formal, written application that contains the personal information and is on the form required by the Administration; or (2) [i]nformally request admission." § 10-609(b). The facility can admit an individual if:

> (1) The individual has a mental disorder;
> (2) The mental disorder is susceptible to care or treatment;
> (3) The individual understands the nature of the request for admission;
> (4) The individual is able to give continuous assent to retention by the facility; and
> (5) The individual is able to ask for release.

§ 10-609(c). Upon consideration of Dr. Cummings' testimony, the Court finds that Petitioner could not have understood the nature of the request. Accordingly, the Court finds Petitioner did not have the ability to become a voluntary patient.

The Court will address the remaining questions in conjunction because both deal with Petitioner's Advanced Mental Health Care Directive. The record is not clear as to why BWMC did not honor Petitioner's Directive appointing Petitioner's father, Mr. Mancuso, as her Health Care Agent. At the Hearing, Petitioner's father testified to his repeated attempts to make health care decisions for Petitioner as her Agent, but BWMC ignored those attempts. When asked about the Directive and Mr. Mancuso's attempts, Dr. Cummings testified that he had issues with the Directive and did not believe Petitioner's father wanted to make decisions in Petitioner's best interest as her Agent. Dr. Cummings did not, however, testify as to why the Directive was not upheld and any conversations surrounding the Directive during Petitioner's admission. During the Hearing, BWMC's attorney broadly argued that they had concerns as to the validity of the document and whether it was legally operative.

Yet, BWMC never officially challenged the validity and enforceability of the Directive. Advanced directives for mental health treatment are operable and encouraged in Maryland. OAG stated in their Opinion that these documents need to be honored by facilities unless they are

8

challenged. The Court acknowledges OAG opinions are not binding authority and are merely persuasive; however, Maryland lacks case law concerning mental health directives. *See Town of Forest Heights v. Maryland-Nat'l Cap. Park & Plan. Comm'n*, 463 Md. 469, 490 (2019) (citing *State v. Crescent Cities Jaycees Found.*, Inc., 330 Md. 460, 470 (1993); *Read Drug/Chem. Co. v. Claypoole*, 165 Md. 250, 257 (1933)). The Court therefore finds it appropriate to give the OAG Opinion consideration for purposes of this appeal.

Without a challenge of the Directive and a formal ruling as to its validity and enforceability, BWMC should have honored the Directive and allowed Petitioner's father to be her Health Care Agent. As Petitioner's Agent, Mr. Mancuso would have been given the opportunity to voluntarily admit Petitioner, but he was never afforded the opportunity to do so. Moreover, the ALJ's conclusions (1) that the document was not persuasive and (2) that, even though it may be legally important for many reasons, BWMC was not bound by the directive because it was not argued to her by either party, is legally erroneous. The Court finds that there is no evidence to support this conclusion. The ALJ heard minimal argument on the Directive and did not make any factual findings as to its validity and enforceability but made the conclusion that the document was not persuasive and BWMC was not bound by the Directive. Accordingly, the ALJ's decision is reversed because it is legally erroneous and not supported by any evidence.

The Court finds the ALJ's conclusion troubling and has concerns as to the precedent this conclusion sets. As Petitioner argued in her Memorandum, hospitals routinely deal with legal documents and binding agreements regarding health care decisions. The example cited by Petitioner deals with a durable medical power of attorney. Petitioner posed the hypothetical question of whether a hospital is allowed to disregard a health care agent appointed under a durable medical power of attorney if the hospital believes the agent is acting contrary to the patient's best

9

interest. When put into this context, the Court finds that the answer is a clear "no." Thus, why should it be any different for advanced mental health care directives? The Court finds that there is no difference.

IV.     CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in issuing the Certification and involuntarily committing Petitioner to BWMC. The Court finds that the ALJ's legal conclusions as to the validity and operability of the Advanced Mental Health Directive are legally erroneous. The evidence before the ALJ did not support this conclusion. Thus, the ALJ should have abided by Petitioner's Directive and allowed Petitioner's Healthcare Agent, Mr. Mancuso, to make decisions regarding Petitioner's BWMC admission. The Court will issue a separate Order that is consistent with this Memorandum Opinion.

01/03/2024
Date

Judge Pamela K. Alban

Pamela K. Alban, Judge    01/03/2024 8:50:59 AM
Circuit Court for Anne Arundel County

10

Add. 0010

| | | |
|---|---|---|
| T.M., | * | IN THE |
| Appellant, | * | APPELLATE COURT |
| v. | * | OF MARYLAND |
| BALTIMORE WASHINGTON MEDICAL | * | No. 878 September Term, 2023 |
| CENTER, *et al.*, | * | MDEC: ACM-REG-878-2023 |
| Appellees. | * | (Cir. Ct. No. C-02-CV-23-000910) |

\* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

On November 13, 2023, this Court stayed the above-captioned appeal pending further order of this Court. Upon consideration of the appellant's July 3, 2024 "Line" updating the Court as to the status of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 1:23-CV-01684-SAG, it is this 10th day of July 2024, by the Appellate Court of Maryland,

ORDERED that the above-captioned appeal shall continue to be stayed pending further order of this Court; and it is further

ORDERED that the counsel for the appellant shall update this Court as to the status of this appeal and how the parties propose to proceed within 15 days of the United States District Court for the District of Maryland's resolution of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 1:23-CV-01684-SAG, or within 120 days of the date of this Order, whichever comes sooner.



Judge's Signature Appears
on Original Order

Gregory Wells, Chief Judge

T.M.,

     Appellant,

     v.

BALTIMORE WASHINGTON MEDICAL
CENTER, *et al.*,

     Appellees.

\*   IN THE

\*   APPELLATE COURT

\*   OF MARYLAND

\*   No. 878 September Term, 2023

\*   MDEC: ACM-REG-878-2023

\*   (Cir. Ct. No. C-02-CV-23-000910)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Upon consideration of the appellant's "Motion to Stay Case," and no opposition thereto having been filed, it is this __13th__ day of November 2023, by the Appellate Court of Maryland,

ORDERED that the motion is granted; and it is further

ORDERED that the above-captioned appeal is stayed pending further order of this Court; and it is further

ORDERED that the counsel for the appellant shall update this Court as to the status of this appeal and how the parties propose to proceed within 15 days of the United States District Court for the District of Maryland's resolution of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 1:23-CV-01684-SAG, or within 120 days of the date of this Order, whichever comes sooner.

CHIEF JUDGE'S SIGNATURE APPEARS
ON ORIGINAL ORDER

Gregory Wells, Chief Judge

T.M.,

    Appellant,

    v.

BALTIMORE WASHINGTON MEDICAL
CENTER, *et al.*,

    Appellees.

\*   IN THE

\*   APPELLATE COURT

\*   OF MARYLAND

\*   No. 878 September Term, 2023

\*   MDEC: ACM-REG-878-2023

\*   (Cir. Ct. No. C-02-CV-23-000910)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

On November 13, 2023, this Court stayed the above-captioned appeal pending further order of this Court. Upon consideration of the appellant's March 5, 2024 "Line" updating the Court as to the status of the appeal, it is this 7th day of March 2024, by the Appellate Court of Maryland,

ORDERED that the above-captioned appeal shall continue to be stayed pending further order of this Court; and it is further

ORDERED that the counsel for the appellant shall update this Court as to the status of this appeal and how the parties propose to proceed within 15 days of the United States District Court for the District of Maryland's resolution of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 1:23-CV-01684-SAG, or within 120 days of the date of this Order, whichever comes sooner.

Gregory Wells, Chief Judge

Add. 0013

| | | |
|---|---|---|
| T.M., | * | IN THE |
| Appellant, | * | APPELLATE COURT |
| v. | * | OF MARYLAND |
| | * | No. 878 September Term, 2023 |
| BALTIMORE WASHINGTON MEDICAL CENTER, *et al.*, | * | MDEC: ACM-REG-878-2023 |
| Appellees. | * | (Cir. Ct. No. C-02-CV-23-000910) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

On November 13, 2023, this Court stayed the above-captioned appeal pending further order of this Court. Upon consideration of the appellant's August 7, 2024 "Line" updating the Court as to the status of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 24-1707 and requesting that this Court continue the stay of this appeal, and no opposition to that request having been filed, it is this 28th day of August 2024, by the Appellate Court of Maryland,

ORDERED that the above-captioned appeal shall continue to be stayed pending further order of this Court; and it is further

ORDERED that the counsel for the appellant shall update this Court as to the status of this appeal and how the parties propose to proceed within 15 days of the United States Court of Appeals for the Fourth Circuit's resolution of *T.M., et al. v. University of Maryland Medical System Corporation, et al.*, Case No. 24-1707, or within 120 days of the date of this Order, whichever comes sooner.

Judge's Signature Appears
on Original Order

Gregory Wells, Chief Judge